O

1

2

3

4

5

6

7

8        UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA

10

11   GEORGE TODD,                    )   Case No. CV 11-0782-DTB
                                      )
12                    Plaintiff,      )
                                      )
13        vs.                         )   ORDER REVERSING DECISION OF
                                      )   COMMISSIONER AND REMANDING
14   MICHAEL J. ASTRUE,               )   FOR FURTHER ADMINISTRATIVE
     Commissioner of Social Security, )   PROCEEDINGS
15                                    )
                      Defendant.      )
16   ─────────────────────────────── )

17        Plaintiff filed a Complaint ("Complaint") on February 2, 2011, seeking review

18   of the Commissioner's denial of his application for Disability Insurance Benefits and

19   Supplemental Security Income.  In accordance with the Magistrate Judge's Case

20   Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on November 3,

21   2011.  Thus, this matter now is ready for decision.[1]

22   / / /

23   / / /

24

25   ─────────────────────────

26        [1]     As the parties were advised in the Case Management Order, the decision
     in this case is being made on the basis of the pleadings, the Administrative Record
27   ("AR"), and the Joint Stipulation filed by the parties.  In accordance with Rule 12(c)
     of the Federal Rules of Civil Procedure, the Court has determined which party is
28   entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues are as follows:

1.     Whether the Administrative Law Judge ("ALJ") should have afforded the treating specialist greater weight.  (Jt. Stip. 4-22.)

2.     Whether the ALJ provided clear and convincing reasons to reject plaintiff's subjective complaints.  (Jt. Stip. 22-30.)


**DISCUSSION**

I.     **Reversal is warranted based on the ALJ's rejection of the treating physician's opinion.**

In Disputed Issue One, plaintiff asserts that the ALJ should have afforded the medical opinions of plaintiff's treating physician, Dr. M. Jay Jazayeri, "controlling weight" because Dr. Jazayeri's opinions are supported by objective medical evidence. (Jt. Stip. 4-9.)  Plaintiff also asserts that the ALJ ignored key medical opinion evidence in the AR.  (Jt. Stip. 10-11.)  These arguments are supported by the record and warrant reversal of the Commissioner's decision.

In evaluating medical opinions, the Ninth Circuit distinguishes among three types of physicians: (1) Treating physicians (who examine and treat), (2) examining physicians (who examine but do not treat), and (3) non-examining physicians (who neither examine nor treat).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  In general, more weight should be given to the opinion of a treating physician than to a non-examining physician.  Id.  Although a treating physician's opinion is entitled to special weight, McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989, "[t]he treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given to a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  See C.F.R. §§ 404.1527(d)(2) and

416.927(d)(2).   Moreover, the Commissioner may reject a treating physician's opinion that is "brief and conclusionary" in the form of a "checklist" with "little in the way of clinical findings to support that conclusion that appellant was totally disabled."  Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 n.3 (9th Cir. 2004); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports); see also Connett v. Barnhart, 340 F.3d 871, 874-875 (9th Cir. 2003) (holding that the ALJ did not err in rejecting the controverted opinion of a treating physician whose restrictive functional assessment was not supported by treatment notes); Holohan v. Massanari, 246 F.3d 1195, 1202 n.2 (9th Cir. 2001) (stating that a physician's opinion may be "entitled to little if any weight" where the physician "presents no support for her or his opinion").

When a treating or examining physician's opinion is not contradicted by another physician, it may only be rejected for "clear and convincing" reasons.  Lester, 81 F.3d at 830.   Where, as in this case, the treating physician's opinion is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  Id. at 830-31; see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted).   "The ALJ must do more than offer his conclusions."   Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).   "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."   Id.

In June 2008, Dr. Jazayeri completed a Physical Capacities Questionnaire with respect to plaintiff.  (AR 352-57.)  Dr. Jazayeri marked the evaluation to indicate that plaintiff's impairments limit him as follows: (1) Plaintiff can stand/walk and sit for 0-2 hours at a time; (2) he can only occasionally lift and carry 10 pounds; (3) he can

never climb, balance, stoop, kneel, crouch, crawl, or reach below his knees, from his waist to his knees, from his chest to his shoulders, or above his shoulders; and (4) he can only occasionally reach from his waist to his chest. (AR 353-54.) Dr. Jazayeri also noted that plaintiff is restricted in using his hands/fingers for repetitive motions due to cervical radiculopathy in his left upper extremity, and is restricted in using his feet for repetitive movements due to a lumbosacral sprain and respiratory problems. (AR 353.)

The ALJ gave "no weight" to Dr. Jazayeri's medical opinions because he found that they were "not supported by the objective findings." (AR 23.) Specifically, the ALJ found that Dr. Jazayeri's opinions conflicted with those of Dr. Adi Klein, an examining physician, as well as those of Dr. E.L Gilpeer, a consultative physician. (AR 22-23, 176-89.) Dr. Klein performed an internal medicine evaluation of plaintiff in March 2007. (AR 176-83.) Dr. Klein noted that plaintiff could not recall any specific injury that might have caused his sleep apnea and that plaintiff had not been hospitalized for that condition within the past year. (AR 176.) Dr. Klein noted that plaintiff was sleeping when she entered the exam room and seemed to be in no acute distress. (AR 178.) Dr. Klein found no tenderness to palpation or muscle spasm in plaintiff's back and found that the straight leg test was "negative" at 90 degrees (both seated and supine). (AR 179.) Dr. Klein further found that the range of motion of plaintiff's back on flexion was to 30/90, extension was to 0/25, right lateral flexion was to 10/25, and left lateral flexion was to 20/25, "all with pain." (Id.) Based on this examination, Dr. Klein concluded that, due to his impairments, plaintiff: (1) Can lift and carry 50 pounds occasionally and 25 pounds frequently; (2) can walk and stand six hours out of an eight hour workday, with appropriate breaks; (3) can sit six hours out of an eight hour workday; and (4) suffers from no postural, manipulative, visual or communicative limitations. (AR 181.) Dr. Gilpeer examined plaintiff's medical records and completed a Physical Residual Functional Capacity Assessment in March 2007. (AR 184-89.) Dr. Gilpeer agreed with Dr. Klein's assessments

regarding plaintiff's functional capabilities to lift and carry, walk, stand, and sit. (AR 185-86.) Dr. Gilpeer found that plaintiff possesses no significant limitations, and that plaintiff's sole limitation is that he can only occasionally kneel. (AR 187-88.)

Based on the evidence above, as well as on his own reading of the medical record evidence, the ALJ found that plaintiff: (1) Can occasionally lift and carry 10 pounds and frequently lift and carry less than 10 pounds; (2) can stand and walk for approximately two hours in an eight hour day and can sit for six hours in an eight hour day; (3) cannot climb ladders/ropes or crawl; (4) can occasionally climb ramps/stairs, balance, stoop, kneel and crouch; (5) can occasionally reach bilaterally; and (6) must avoid working at unprotected heights, driving, and working around dangerous moving machinery. (AR 23.)

The ALJ's finding that Dr. Jazayeri's opinions are "not supported by the objective findings" is without evidentiary support, and is thus insufficient to justify the rejection of Dr. Jazayeri's opinion. (AR 23.) See e.g., McAllister, 888 F.2d at 602 ("broad and vague" reasons for rejecting the treating physician's opinions do not suffice); Embrey, 849 F.2d at 421 ("To say that the medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required . . ."). Where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ must determine credibility and resolve the conflict. Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (quoting Thomas, 278 F.3d at 956-57.) But to reject the opinion of a treating physician in favor of a conflicting opinion of another doctor, an ALJ *still* must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. Id. Here, however, the ALJ failed to provide specific, legitimate reasons (or any reasons at all) for rejecting Dr. Jazayeri's opinions in favor of the opinions of Drs. Klein and Gilpeer. Further, while the ALJ rejected Dr. Jazayeri's opinions in the Physical Capacities Questionnaire as "not

supported by the objective findings," he neglected to discuss or even mention the significant record of plaintiff's treatment by Dr. Jazayeri in the AR.  (See, e.g., AR 205-20, 299-303, 382-99.)  Much like his cursory findings regarding Dr. Jazayeri's medical opinions, the ALJ's own independent findings regarding plaintiff's functional limitations are also without evidentiary support.  (AR 23.)  These findings are not supported by Dr. Jazayeri's opinions, nor by the opinions of Drs. Klein or Gilpeer.  For this reason, they are similarly insufficient to justify rejecting the medical opinion of Dr. Jazayeri.

In sum, the ALJ's rejection of Dr. Jazayeri's medical opinion was unsupported by specific and legitimate reasons.  Lester, 81 F.3d at 830-31.  Accordingly, reversal is required.

## II.   Reversal is warranted based on the ALJ's credibility evaluation.

In Disputed Issue Two, plaintiff asserts that the ALJ failed to properly evaluate plaintiff's credibility because he cited to minor inconsistencies in the record, and provided "arbitrary reasons" for doubting plaintiff's testimony regarding the level of his pain and ignored evidence in the AR that plaintiff pursued treatment for his impairments.  (Jt. Stip. 22-25.)  These arguments are supported by the record and thus, warrant reversal of the Commissioner's decision.

During the administrative hearing, plaintiff testified that he stopped working in 2002 because his back went out and a doctor told him he could no longer perform his warehouse job.  (AR 35.)  Plaintiff also testified that he "can't sleep at all" due to sleep apnea and that his apnea causes him to stop breathing "maybe 20 times" during the night.  (AR 36, 38-39.)  He testified further that he can no longer drive because his sleep trouble often causes him to "blackout" while on the road.  (AR 39.)  Plaintiff also noted, however, that he often turns off the CPAP machine prescribed to treat his apnea because it makes his nose run.  (AR 39.)  Plaintiff testified that he takes several medications for his back pain and that while he can bathe himself, he often needs help

1   dressing himself and preparing meals. (AR 36-37.)  Plaintiff testified further that
2   while he was prescribed physical therapy to treat his back pain, "it didn't work" and
3   it only caused him more pain.  (AR 39.)  From a functional standpoint, plaintiff
4   testified that: (1) He cannot walk more than a block without having to stop and rest
5   for five to ten minutes; (2) he can stand for only five to ten minutes before having to
6   sit down; (3) he can sit for no more than 30 minutes before having to stand up for a
7   period of 15 minutes; (4) he can lift maybe five to ten pounds; and (5) he can only
8   engage in household activities for ten minutes before he has to rest.  (AR 40-42.)

9       In the administrative decision, the ALJ stated that he "cannot give weight" to
10  plaintiff's subjective pain testimony, citing the following reasons: (1) Plaintiff's
11  statements are inconsistent with the objective findings and the record as a whole; (2)
12  there is little evidence that plaintiff pursued treatment for his impairments, and
13  whatever treatment he received was "conservative . . . mostly medication
14  management"; (3) plaintiff is not currently pursuing physical therapy, he does not use
15  his TENS machine, and there is no evidence that he uses any home remedies such as
16  a heating pad, hot water bottle, or hot baths; (4) there is no evidence of a "large,
17  unintended weight loss" due to a loss of appetite due to pain; (5) there is no
18  corroboration for his claims of pain and sleep deprivation; (6) plaintiff initially
19  reported an onset date of 2004, but later reported that he worked in 2005; (7) plaintiff
20  stated he needs help driving, but has a valid driver's license; and (8) plaintiff was
21  vague about when exactly his pain started.  (AR 23-24.)

22      "Generally, 'questions of credibility and resolution of conflicts in the testimony
23  are functions solely' for the ALJ." Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007)
24  (quoting Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982)).  To determine
25  whether a claimant's subjective symptom testimony is credible, the ALJ must engage
26  in a two-step analysis.  Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.
27  2007).  "First, the ALJ must determine whether the claimant has presented objective
28  medical evidence of an underlying impairment 'which could reasonably be expected

7

1   to produce the pain or other symptoms alleged.'" <u>Id.</u> at 1036 (quoting <u>Bunnell v.</u>

2   <u>Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  "Second, if the claimant

3   meets this first test, and there is no evidence of malingering, 'the ALJ can reject the

4   claimant's testimony about the severity of [his] symptoms only by offering specific,

5   clear and convincing reasons for doing so.'" <u>Id.</u> (quoting <u>Smolen v. Chater</u>, 80 F.3d

6   1273, 1282 (9th Cir. 1996)).  An ALJ must "specifically identify" the testimony found

7   not credible and explain "what evidence undermines" the testimony. <u>Parra</u>, 481 F.3d

8   at 750 (citing <u>Lester</u>, 81 F.3d at 834).  Because plaintiff's record includes objective

9   medical evidence establishing that he suffers from impairments that could reasonably

10  produce the symptoms of which he complains, and as there was no affirmative

11  evidence of malingering, the "clear and convincing" standard is applicable.  <u>See</u>

12  <u>Carmickle</u>, 533 F.3d at 1160.

13      Under this standard, the reasons provided by the ALJ to discount plaintiff's

14  credibility were not clear and convincing.  First, the ALJ improperly concluded that

15  plaintiff's statements "are not consistent with the objective findings or the record as

16  a whole." (AR 23.)  As discussed above, the ALJ ignored vast swaths of medical

17  record evidence contained in the AR when reaching his decision to give "no weight"

18  to the medical opinions of Dr. Jazayeri.  (Id.)  Further, as plaintiff notes, the ALJ

19  failed to consider 70 pages of medical record evidence of plaintiff's visits to the

20  Children's Clinic over a two-year period from 2005 to 2007.  (Jt. Stip. 10-11) (AR

21  227-95.)  Thus, for the ALJ to discount plaintiff's credibility because "[t]here is very

22  little evidence of treatment," is to ignore a considerable amount of the evidence in the

23  AR. (AR 23.)  Second, the ALJ improperly relied upon plaintiff's alleged failure to

24  pursue treatment consistent with the alleged severity of his symptoms.  (AR 23.)

25  <u>Bunnell</u>, 947 F.2d at 346 (en banc); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir.

26  1999) (ALJ properly rejected plaintiff's claim of severe pain as inconsistent with the

27  "minimal, conservative treatment" she received); <u>see</u> <u>Tidwell v. Apfel</u>, 161 F.3d 599,

28  602 (9th Cir. 1999) (lack of treatment and reliance upon nonprescription pain

medication "clear and convincing reasons for partially rejecting [claimant's] pain testimony.")  The ALJ noted that while plaintiff testified that he suffers from back pain and was assigned physical therapy to treat this pain, he stopped attending physical therapy because "it didn't work." (AR 23, 39.)  However, the ALJ ignored plaintiff's testimony that he stopped attending physical therapy because it caused him even more back pain than he experienced without the therapy. (AR 39.) ("It just hurt my back worse when they bend it so the doctor had them stop.").  Further, the ALJ improperly discredited plaintiff for his failure to use "a heating pad, hot water bottle, or hot baths for pain relief." (AR 23.)  As plaintiff notes, the ALJ failed to provide any reason for assuming that these "home remedies" would have benefitted plaintiff. (AR 23) (Jt. Stip. 24.)  Third, while it is true that the ALJ noted several internal conflicts within plaintiff's own statements and testimony that prompted him to discredit plaintiff's credibility, these inconsistencies were minor and inconsequential.  See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (ALJ can reject pain testimony based on contradictions in plaintiff's testimony).  The ALJ noted that while plaintiff testified that he stopped working in 2002, he earlier reported that he last worked in 2005. (AR 23-24, 33, 177.)  Further, the ALJ noted that plaintiff was vague about when exactly his pain began: At one time he reported that his pain began in 1992, though at another time he reported that it began in 1999. (AR 24, 111, 129.)  Neither of these reasons was sufficient for the ALJ to justify discounting plaintiff's credibility entirely.  Further, the ALJ noted that while plaintiff testified that he has trouble driving and often blacks out at the wheel, he still maintains a valid driver's license. (AR 24, 33.)  That plaintiff has a valid driver's license has no bearing on the fact that plaintiff feels uncomfortable driving and would prefer instead for others to drive him, as was the case the day of the administrative hearing. (AR 33.)

The ALJ simply did not provide sufficient justification for discounting plaintiff's credibility.  Because his findings were not supported by clear and convincing reasons, reversal is required.  See Lingenfelter, 504 F.3d at 1035-36.

9

**ORDER**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (per curiam) (as amended).

This is not an instance where no useful purpose would be served by further administrative proceedings. The current record does not mandate a determination of disability, and outstanding issues remain before such a determination can be made. As such, remand for further administrative proceedings is appropriate. See Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003.)

Pursuant to sentence four of 42 U.S.C. § 405(g), IT THEREFORE IS ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED: November 28, 2011

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE

10